Opinion by
Rice, P. J.,
. This is an appeal from the decree dismissing the petition of the administrator for the specific performance of a written contract for the sale of land by Martha G. Dunbar, the decedent, to A. B. Gaston, the respondent in the pro-> *219 ceeding, and the appellee here. The execution of the contract was admitted, and, although it was set up in the answer that the land was not sufficiently described therein, this objection was not sustained by the court and has been abandoned by appellee’s counsel. Therefore we need not discuss that objection.
1. It is claimed that the writing was given as a mortgage, and in support of this contention we are referred to the following averment of the answer, which, as the answer was demurred to, is to be taken as admitted: “That the said Martha G. Dunbar, being about to become a mother, came to the respondent and begged of him to provide for her the funds necessary for her support and comfort during the time of her expected confinement, and offered in order to protect him for the money so advanced to agree to sell to him the property mentioned in the agreement, a copy of which is attached to the petition in this case. That your respondent has a life estate in said property and did not desire to make the purchase; but under the circumstances complied with her request and executed said agreement, it being understood between them that the said agreement was in fact a protection for the money thus advanced to her.” All this may be true, but it is utterly insufficient to convert the agreement into a mortgage, as will be made apparent by a brief reference to the terms of the instrument. The stipulated price was $1,000, which was to be paid in the following manner: The agreement was executed in May, 190.9, and by its terms the respondent was (1) to pay, during the month of May, certain debts, amounting to about $300, which the vendor owed to others; (2) to pay such hospital expenses as might accrue at the time of the vendor’s expected confinement in the near future; (3) to pay, in November, an amount in cash sufficient, with the above items, to make an aggregate of $500; and (4) to pay “the remaining half of the purchase money, amounting to $500,” on or before June 1, 1909. It is thus seen that the money the respondent agreed to pay for the expenses *220 incident to the vendor’s expected confinement was but a very small part of the consideration. We may assume, from the averment of the answer, that the motive which induced the respondent to buy the property was to provide the vendor (his daughter) with money for her needs. But there is no express averment, and no ground for inference from what is averred, that the parties agreed, or even “understood,” that she could have the contract canceled upon her repayment of the expenses of her confinement, or that he could absolve himself from his obligation to pay the whole purchase money by surrendering his rights in the land and forfeiting the money he had already paid. Grant that both “understood” that the agreement was for his “protection,” the understanding of neither would be disappointed by enforcing the contract according to its plain terms, for, as it is not alleged that the purchase price agreed upon did not fairly represent the value of the land, the rights and interests of both were protected by the written agreement. In the absence of clear and precise averment to the contrary, it is to be presumed that this mode of protecting them was their deliberate choice. We may, therefore, dismiss the contention that the agreement was intended as a mere mortgage, without further comment.
2. It is argued that the death of Martha G. Dunbar, and the death a few days afterwards of her minor child, have so changed the conditions that it would be inequitable to enforce specific performance of the contract. Upon this subject the learned judge says: “If we grant the prayer of the petitioner and direct a specific performance of said contract upon the part of the respondent, the effect in the absence of any surviving issue of the said Martha G. Dunbar, is to convert said realty into personalty, to which the petitioner, husband of said decedent, and heir of the said child, would succeed absolutely. The refusal of the prayer of said petition would leave this part of Martha Dunbar’s estate in realty, in which the respondent already has a life estate, with the remainder vesting in the col *221 lateral heirs of said decedent.” This view of the case is based on the assumption of a fact not distinctly alleged, namely, that the balance of purchase money which the respondent will be compelled to pay will not be required to pay debts and administration expenses of Martha G. Dunbar’s estate; and it is to be observed that when the petition was filed the time for filing an account by the administrator had not arrived. But granting the fact assumed in the argument, why should it be ground for denying to the administrator of her estate the right to pursue the remedy provided by sec. 15 of the Act of February 24, 1834, P. L. 70, that the money will eventually go, on distribution of the decedent’s estate, to her husband? It is said, in answer, that he did not furnish her with sufficient funds for her proper support, and that they incurred debts which he neglected to pay. We will assume that the averments of the answer, although rather vague, justify the conclusion that his neglect in these particulars was willful, and not the result of misfortune, and was the inducing cause for her raising money by the sale of the land. But still it does not satisfactorily appear that this would be sufficient ground for refusing the decree in order, in this indirect way, to change the course of distribution of the estates of intestates which the legislature has prescribed. It is true, as the cases cited by appellee’s counsel show, that subsequent events which the parties cannot reasonably be supposed to have had in mind when the contract was made, and which work a hardship to the defendant, have frequently furnished a sufficient reason for refusing specific performance. But it is also true, that the fact that a contract fair when made, as this was, has become a hard one by force of changed circumstances and subsequent events, will not necessarily prevent its specific performance. It depends upon the circumstances. And, generally, the happening of subsequent events which may reasonably be supposed to have been in the contemplation of the parties as possible to happen, is not a defense: 36 Cyc. of Law & Pro., sec. 616. *222 Here, the parties are presumed to have contracted with knowledge of the well-settled principle that a contract for the sale of land converts the right to the purchase money into personalty, which, upon the death of the vendor, passes to his personal representatives and under the jurisdiction of the orphans’ court. They are also presumed to have contemplated that, in the event of the vendor’s death without having made any sufficient provision for the performance of the contract, her executor or administrator could apply to the orphans’ court for a decree of specific performance, under the section of the act of 1834 to which we have alluded. It appears further, by the answer, that they knew that she was about to give birth to a child, and they must be presumed to have known how the purchase money not needed, for the payment of debts of her estate and expenses of administration would be distributed under the intestate laws of the commonwealth, in the event of her death intestate; and the subsequent death of her unborn child. There is nothing in the petition or answer that would warrant us in saying that either party expected both of- these events to occur within a few months. But, on the other hand, there is nothing in their nature, or in the circumstances existing at the time the contract was made, that would warrant us in saying that the parties cannot reasonably be supposed to have had in mind the possibility of their occurrence. This being so, we fail to see where any hardship, of which the respondent or the collateral heirs of the decedent can complain, will result from enforcing the contract. It is not tainted by fraud. No mistake, either of law or of fact, is alleged. It is not claimed that the consideration was excessive or inadequate. Indeed, nothing is alleged that would have justified a court in refusing to permit the vendor, if she had lived, to recover the purchase money upon tendering a deed. Nor can the disappointed expectations of her collateral heirs be regarded as a hardship which ought to move the orphans’ court to withhold the exercise of *223 the power given by the act of 1834, when invoked by proper parties and in a .proper manner after her death. For it is to be borne in mind that she had a right to do with her land as she chose. She might have sold it for cash and spent the purchase money. She might, in many other ways, have so disposed of it as to prevent the possibility of her collateral heirs ever enjoying it. And if she chose to so deal with it that, in the not extraordinary event which has happened, the purchase money would go to her husband, “unworthy” though he maybe, no one has standing to say that he will suffer a hardship if the law of distribution is permitted to take its course.
3. It is suggested that the petitioner was guilty of laches and the decree might have been refused on that alone. This position is not tenable. The petition was filed within a year and a half after the decedent’s death, and no circumstances are alleged from which it can be inferred that anyone suffered or could have suffered by this short delay.
It is to be observed further, that, while the learned court remitted the appellant to his remedies at law, it does not appear what adequate remedy at law there is, except the remedy which the statute gives.
We recognize the well-settled principle, that an application for specific performance is addressed'to the discretion of the court, and is not in all cases to be granted, even though there may be no defense at law. But this discretion is not an arbitrary discretion regulated solely by considerations of pure benevolence, but a sound judicial discretion, regulated by established principles of equity. And upon full consideration of the case we discover no equitable principle that ought to prevent the exercise of the power here.
The decree is reversed, the petition is reinstated, and the cause is remitted to the orphans’ court to be proceeded with to final decree of specific performance in accordance with the provisions of the statute in such case made and provided; the costs of this appeal to be paid by the appellee.